## STEVENSON v. AALTO.

1. ADVERSE POSSESSION—ELEMENTS—PROOF.
   Adverse possession must be established by clear and cogent proofs of possession that is actual, visible, open, notorious, exclusive, continuous, uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right (CL 1948, § 609.1).

2. SAME—DURATION—EVIDENCE.
   Finding of trial court that plaintiffs had failed to establish their claim of adverse possession in suit to quiet title in that they failed to establish possession for the statutory period of 15 years is not disturbed on *de novo* review, where it is not clear that a wrong conclusion was reached (CL 1948, § 609.1).

3. REFORMATION OF INSTRUMENTS—MISTAKE—EVIDENCE.
   Reformation of a written instrument on the grounds of mistake must be established by clear and convincing testimony of mistake that is mutual and common to both parties to the instrument.

4. SAME—MISTAKE—BURDEN OF PROOF.
   The burden of establishing mistake as a basis for reforming a written instrument is upon the party seeking the reformation.

5. SAME—DE NOVO REVIEW—EVIDENCE.
   The determination of factual questions by the trial court in a suit for reformation of instruments is not disturbed on *de novo* review, where it is not clear a wrong conclusion was reached.

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur, Adverse Possession §§ 126, 246.
[2, 5] 3 Am Jur, Appeal and Error §§ 885, 895, 912.
[3] 45 Am Jur, Reformation of Instruments §§ 55, 116, 117.
[4] 45 Am Jur, Reformation of Instruments § 112.

6. APPEAL AND ERROR—ADVERSE POSSESSION—REFORMATION OF IN-
   STRUMENTS—MISTAKE—DESCRIPTION.

   Evidence supported trial court's findings that plaintiffs had
   failed to establish title to land claimed by way of adverse
   possession but had established facts requiring a reformation
   of all deeds in question because of mutual mistake, where
   description started at a, surveyor's monument instead of
   corner of land supposedly owned by reason of claimed ad-
   verse possession.

7. COSTS—FAILURE OF EITHER APPELLANTS OR CROSS-APPELLANTS TO
   PREVAIL.

   No costs are allowed, where decree of trial court is affirmed and
   neither the appellants nor cross-appellants have prevailed.

Appeal from Chippewa; Runnels (Herbert W.),
J. Submitted April 8, 1952. (Docket No. 3, Calen-
dar No. 45,187.) Decided May 16, 1952.

Bill by Frank Stevenson and others against Arne
V. Aalto and others to quiet title by adverse posses-
sion and to reform certain deeds. Decree reforming
deeds. Defendants appeal. Plaintiffs cross-appeal.
Affirmed.

*Hudson, Coates & Kline,* for plaintiffs.

*Adams & Fenlon,* for defendants.

BUSHNELL, J. In 1923 plaintiff Frank Stevenson
purchased land on Drummond Island in Chippewa
county, Michigan, described as lot 1, section 10, town
42 north, range 6 east, south of his family homestead
on lot 5 of section 3. Lot 1 is bounded on the west by
Potagannissing Bay, an arm of Lake Huron, on the
south by lot 2 of section 10, which is owned by de-
fendants Arne V. Aalto and wife and Viesta Wills,
and on the east by a county road. Stevenson sought
to quiet title to a portion of the land which he also
claims to own by adverse possession. Plaintiffs Jay
Eldred and wife, John Badaczenski, and Dave Stap-

leton, joined with Stevenson in seeking a reformation of the descriptions in certain deeds given them by Stevenson. Defendants John Phillips and wife filed an answer and. cross bill to determine their right to a cabin built by Eldred and located on the parcel which they claim to. own. Defendants Mosshamer, King and Pardridge adopted the answer filed by Phillips.

When Stevenson fenced his property he included therein a northerly portion of lot 2. Although defendants argue to the contrary, the testimony indicates that the southerly fence ran 252 feet south of the line dividing lots 1 and 2. Stevenson's father, a lumber cruiser, ran the line on which this fence was built in 1924. His sister, Margaret Cleaver, testified that she helped him build the fence that year. However, Stevenson's brother, Harvey, and another sister, Anna McKee, said the fence was built in 1927.

According to Stevenson, this rail fence, substantial enough to turn cattle, extended straight across the south line of the property. Elwood Cleaver, his brother-in-law, testified that the fence was still there in 1944. Aalto said that when he removed the fence in 1948, only about 10% of it was standing.

Stevenson testified to actual occupancy and pasturage use of the disputed portion of lot 2 from 1924 to 1945. Harvey testified that the pasture was not used after 1939. He admitted, however, that, because he worked away from home a good deal, he was not on Drummond Island at all times between 1927 and 1944.

Stevenson did not discover the error in the location of the south line of his property until the land was surveyed in 1948. He said no other claim of ownership or right of possession was asserted by anyone until after the mistake was revealed by the survey. Stevenson in 1946 sold a southerly portion of lot 1, including the land in dispute.

Defendants contend that Stevenson never asserted ownership of the disputed parcel, but that the fence was built merely for the purpose of using some good pasturage land, and that the then owners, who were friends of the Stevensons, made no objection to such use. They also rely upon the fact that when Stevenson pointed out the boundaries of their land to the Aaltos in 1946 he said nothing about the southerly fence, and that the south line which he indicated to the surveyor in 1948 was only 8 or 10 feet from the one which was later established by the survey.

In 1944, after plaintiff Eldred had made several trips to Drummond Island, he selected the location he wanted by indicating a strip 125 feet wide along the county road. Stevenson, Cleaver and Eldred, in order to locate Eldred's property, started at the intersection of the fence with the county road and measured 425 feet north along the road; then by a compass ran west to the shore of the bay; then south 125 feet. Later Stevenson checked and found that Eldred's north line was also 425 feet north of the fence at the shore line.

Stevenson's deed to Eldred purported to convey property located 300 feet north of the fence, but its description read: .

"Beginning at a point three hundred (300) feet from the southwest corner of lot Number One (1)," et cetera.

In 1945 Stevenson sold Eldred another 125-foot lot immediately north of the first lot, in 1946 a 300-foot lot between the fence and the first lot, and in 1947 a 122-foot lot north of and adjoining Eldred's second lot. All of these deeds were drafted under the assumption that the fence was the south line of lot 1.

In 1946 Stevenson sold a lot to defendant Mosshamer after showing him the land and the old fence.

Mosshamer testified that, although he was shown some property, he did not have the slighest idea of where the north and south lines were located. He relied on some crossed sticks lying on a brush pile, which Stevenson said marked the line. Mosshamer explained his lack of knowledge by the fact that he planned on having a survey made later. The deed to this 130-foot parcel of Mosshamer's indicated a point of beginning 672 feet from the southwest cornor of lot 1, instead of that distance from the old fence.

Plaintiff Badaczenski in 1946 purchased a 118-foot lot immediately north of Mosshamer's lot. He also examined the property and helped measure his line. He later built a cabin, dock, road and walk on the land he thought he had bought. His description contains the same errors that appear in previous deeds.

In November of 1946 Stevenson sold a lot 100 feet wide to defendants Phillips and wife. There were two 100-foot lots between Badaczenski on the south and the one Phillips selected on the north. Stevenson said that the lots were marked by stakes, but Mrs. Phillips stated that they were not shown any stakes. Both Phillips and his wife testified that the lot they bought had a spring on it. No lines were run for the Phillips lot as it was contemplated that they would be determined later by a survey. Phillips said that Stevenson did not tell him that the measurements were from the old fence line and his property was described in his deed as being measured from the southwest corner of lot 1.

The 100-foot lot immediately north of Badaczenski was sold to plaintiff Stapleton, who helped Stevenson measure the line from the old fence. Later Stapleton and Badaczenski filled in a swamp on their lots and built a common road. The other 100-foot lot identified, according to Stevenson, as lying be-

tween Stapleton's lot and that of Phillips, was sold to defendants King and Pardridge. Neither of these parties saw the land prior to receiving their deed and both insisted that it was identified to them as the third 100-foot lot south of the north line of lot 1. The description in their deed began at a point 200 feet south of the northeast corner of lot 1, but the measurements made by Stevenson were based upon a mistaken assumption as to the location of the starting point.

The last parcel in lot 1 was sold to defendant Steffens. He bought without seeing the property which was described to him by Stevenson as a lot having a big stone upon it. He was later shown a lot other than the one described in his deed but which had such a stone on it. The description in the Steffens deed is also erroneous.

Following these sales, Stevenson figured that, after conveying 1,320 feet along the county road, he had sold all of lot 1. However, in 1947 he sold a 180-foot lot to Eldred, who viewed this parcel, described in the deed as beginning 1,320 feet along the shore from the southwest corner of lot 1 and being a part of lot 1 of section 10, and lot 5, section 3. A part of this parcel was then conveyed by Eldred to defendants Jewel E. West and wife.

When Eldred began the erection of a cabin on his 180-foot parcel, Anna McKee, Stevenson's sister, asked Eldred if he was building on the right lot. She suggested to him that the rail fence was not the true south line of lot 1. However, Eldred continued with his construction.

All of the parties joined in a survey by R. H. Larson, county surveyor, in 1948, which disclosed that the south line of lot 1 is located some distance north of the rail fence. Confronted with this perplexing situation, the dispute between Phillips and Eldred as to the cabin built by Eldred on land which the

survey disclosed belongs to Phillips, Stevenson instituted the litigation with which we are now concerned.

The trial judge determined that Stevenson had not established title to the north 252 feet in lot 2 by adverse possession and denied his claim to ownership thereof. He found mutual mistake between the parties regarding the descriptions in the various deeds and ordered the entry of a decree of reformation. Defendants Phillips have appealed and plaintiff Stevenson has cross-appealed.

Adverse possession must be actual, visible, open, notorious, exclusive, continuous, uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right. See CL 1948, § 609.1 (Stat Ann § 27.593). *McVannel* v. *Pure Oil Co.,* 262 Mich 518; *Cotton* v. *McClatchey,* 277 Mich 109, 114; *Warner* v. *Noble,* 286 Mich 654, 660; and *Yatczak* v. *Cloon,* 313 Mich 584, 589. The elements of adverse possession must be established by clear and cogent proof. *Barley* v. *Fisher,* 267 Mich 450, and *Bankers Trust Company of Muskegon* v. *Robinson,* 280 Mich 458.

The trial court said:

"There was testimony to the effect that Frank Stevenson had fenced this land and had used and occupied it adversely and notoriously for more than 15 years. This, however, was denied by the defendants, Arne V. Aalto and others, and after a thorough consideration of the testimony as to adverse possession, I am not satisfied by a preponderance of the evidence that Frank Stevenson, Jay Eldred and Anna Eldred, his wife, had used and occupied this land for 15 years or more by open, adverse, notorious and hostile possession within the meaning of the statute."

Equity cases are heard *de novo* on appeal, but the determination of the trial court regarding dis-

puted questions of fact will not, and should not, be disturbed, unless it is clear that a wrong conclusion has been reached. *Schuur* v. *Berry,* 285 Mich 654; and *Barrett* v. *Swisher,* 324 Mich 638.

The conflicting testimony as to the duration and character of plaintiff Stevenson's possession of the disputed 252 feet south of the surveyed line between lots 1 and 2 and the fence line has been examined and we find no reason to disturb the finding of the lower court in this particular.

The trial court's determination that plaintiffs Stevenson, Eldred and his wife, are not owners by adverse possession of this portion of the property must be affirmed.

In order to decree the reformation of a written instrument on the ground of mistake, that mistake must be mutual and common to both parties to the instrument. The burden of establishing such mistake is upon the party who seeks reformation. The evidence must be convincing and must clearly establish the right to reformation. *Schuler* v. *Bucuss,* 253 Mich 479; *Sobel* v. *Steelcraft Piston Ring Sales, Inc.,* 294 Mich 211; *Emery* v. *Clark,* 303 Mich 461.

It is apparent that there was mutual mistake in the descriptions in the deeds from Stevenson to Eldred, Badaczenski and Stapleton. The grantor, Stevenson, pointed out to these purchasers the property they were to receive. The grantees aided Stevenson in the measurement of that property and made improvements on the land they presumed they were buying.

Defendants Mosshamer and Phillips each admitted that they were shown the property they were to receive, although both of them seemed vague as to their understanding of the actual location. Mosshamer admitted that he was shown some boundary lines and that he knew the land he was buying was

immediately north of that supposedly owned by
Eldred. Phillips claimed that he was shown land
on which a small spring was located. However, there
is considerable dispute between Stevenson and Phil-
lips regarding the location of the spring. Both
Mosshamer and Phillips will be benefited if their
deeds are not reformed. Both parties saw the land
and must have had some idea of its general location.
However, Stevenson testified that the land described
in their deeds was not the land they were shown.
There is evidence to support the theory of mutual
mistake.

Defendants Steffens, King and Pardridge bought
their lots without any examination of the property.
Both Steffens and Stevenson testified that they were
dealing with a parcel which had a large stone upon
it; nevertheless, another parcel was conveyed. It is
clear here there was mutual mistake.

Stevenson testified that he described the King and
Pardridge land and informed them that it was lo-
cated between the Phillips and Stapleton lots. King
and Pardridge claimed that Stevenson's description
referred to the land only as the third 100-foot lot
south of the north line of lot 1. King and Pardridge,
like Mosshamer and Phillips, will have an added
benefit of certain improvements if reformation is
not granted. According to Stevenson's testimony
the deed conveyed land other than that which he
specifically described to King and Pardridge. This
testimony constitutes evidence of mutual mistake.

The equitable rule as to the determination on ap-
peal of the disputed factual questions is the same
in matters of reformation as it is in matters of ad-
verse possession, in that determination of the lower
court should be affirmed, unless a wrong conclusion
was reached. The fact that the only witnesses who
cast any doubt upon the theory of mutual mistake
in this instance are those who will gain if reforma-

tion is not allowed is persuasive in the face of the conflicting evidence. After a review of the record, we see no reason to disturb the finding of the trial judge as to mutual mistake.

We conclude that plaintiffs did not establish title by adverse possession, but that they did establish facts which require a reformation of all the deeds in question because of mutual mistake.

The trial judge reached an equitable conclusion and the decree of the trial court is affirmed. None of the parties having prevailed in the appeals and cross appeals, no costs will be awarded.

North, C. J., and Dethmers, Butzel, Carr, Sharpe, and Boyles, JJ., concurred. Reid, J., did not sit.