## RUPE v. CINGROS.

1. APPEAL AND ERROR—EQUITY—FINDINGS OF FACT—DE NOVO RE-VIEW.

Equity cases are heard *de novo* on appeal, but the determination of the trial court regarding disputed questions of fact will not, and should not, be disturbed, unless it is clear that a wrong conclusion has been reached.

2. REFORMATION OF INSTRUMENTS—EQUITY—FINDINGS OF FACT.

Claim by defendants that the trial court erred in ruling that plaintiffs were entitled to reformation of their deeds so as to vest disputed title to certain lands in plaintiffs *held*, without merit, where based upon detailed findings of fact made by the trial court adequately supported by the record, since the Court of Appeals does not reverse findings of fact made by a trial court in equity cases unless it is clear that a wrong conclusion has been reached.

3. WITNESSES — DEAD MAN'S ACT — MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

Claim by defendants that the trial court committed reversible error in allowing a disinterested witness to testify as to conversations between himself and deceased grantor *held*, without merit, since the statute barring the introduction of such evidence does not apply to one having no interest that would disqualify him under the statute (CLS 1961, § 600.2160).

4. REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE—BURDEN OF PROOF.

Reformation of a written instrument on the ground of mistake, requires showing that the mistake was mutual and common to both parties to the instrument, with the party seeking reforma-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5]  5 Am Jur 2d, Appeal and Error §§ 703, 822.
[3]  58 Am Jur, Witnesses § 214 *et seq.*
[4]  45 Am Jur, Reformation of Instruments § 112.

tion having the burden of establishing such mistake, and the evidence must be convincing and must clearly establish the right to reformation.

5. SAME—JUDGMENT—EQUITY—DE NOVO REVIEW.
   Judgment of trial court reforming plaintiffs' deed and quieting title to disputed lands in plaintiffs *held,* proper, where *de novo* review of record does not establish that the trial court clearly reached the wrong conclusion.

Appeal from Cass; Anderson (David, Jr.), J. Submitted Division 3 March 8, 1967, at Grand Rapids. (Docket Nos. 1,169, 1,170, 1,171.) Decided June 13, 1967.

Declaration by Jabez R. Love and Ja Be Company, a Michigan corporation, against Maurice Rupe and Otha Rupe, seeking to eject defendants from a 2-1/2-acre parcel of land allegedly owned by plaintiffs on Indian lake, Cass county, Michigan. Maurice Rupe and Otha Marie Rupe thereafter filed a bill of complaint against Dorothy Camp Cingros, Jabez R. Love and Ja Be Company, a Michigan corporation, as well as others, seeking to quiet title in themselves with respect to the same parcel of land as well as a second triangular parcel in the same area. The actions were consolidated for trial. A default judgment was taken on the bill of complaint against Dorothy Camp Cingros. Trial was held to determine whether the owners of the property were Maurice and Otha Rupe or Jabez R. Love and Ja Be Company. Judgment was entered quieting title in Maurice and Otha Rupe. Defendants Jabez R. Love and Ja Be Company appeal. Affirmed.

*Killian, Spelman & Taglia,* for plaintiffs.

*Seymour, Seymour & Conybeare,* for defendants.

FITZGERALD, P. J. This appeal concerns two actions relating to ownership of 2 pieces of land on Indian lake, Cass county, hereinafter referred to as a triangular piece and a 2-1/2-acre parcel. Appellants brought an action for ejectment from the 2-1/2-acre parcel against appellees. Then appellees commenced a suit in chancery against appellants and others to quiet title to both pieces of land. These matters were consolidated for trial. A third suit was begun by appellants to restrain appellees from filling in a portion of Indian lake and to compel removal of fill already completed and resulted in an unappealed judgment of no cause of action.

Appellants assert they are entitled to prevail on the question of ownership of the 2-1/2-acre parcel because they are the title holder of record. They claim to have obtained title by quitclaim deed and point out that the chain of title is complete and unbroken from the government title to the present title they hold.

Appellees believe they are entitled to prevail on 2 separate grounds: adverse possession, and mutual mistake in the drafting of the deed from Edith Moody, deceased, the last title holder.

The trial court, sitting concurrently in chancery and law, ruled for appellees on the ground that there was a mutual mistake in the description of the property contained in the deed. Reformation of the deed was granted to conform with the intent of the parties and included both disputed pieces of land. The trial court also quieted title in appellees as against all defendants. In the third case, a judgment of no cause of action was entered. That judgment has not been appealed.

Appellants raise 3 questions on this appeal:

(1) Did the trial court err in allowing appellees to testify as to conversations between themselves

and their deceased grantor over objection of appellants on the grounds that the testimony violated the "dead man's statute"?

(2) Without the testimony of appellees, was there sufficient evidence to warrant the court finding a mutual mistake in appellees' original contract of purchase, subsequent warranty deed and quitclaim deed?

(3) Was the evidence presented by appellees with reference to adverse possession of the so-called triangular piece of land sufficient to warrant the trial court in giving possession of this parcel to appellees even though their grantor had no record title?

The second question presents the most difficult considerations. It is an appeal from an equity decree. In equity matters the standard of review is:

"Equity cases are heard *de novo* on appeal, but the determination of the trial court regarding disputed questions of fact will not, and should not, be disturbed, unless it is clear that a wrong conclusion has been reached." *Stevenson* v. *Aalto* (1952), 333 Mich 582 at 588, 589.

The trial court in the instant matter found the following, supplying a comprehensive review of the evidence presented to the court:

"The testimony of Rupes as to the intended boundary lines of the disputed triangle is supported by that of Claude Feldman. The boundaries of the 2-1/2-acre parcel, especially on the north and east, were marked by old fences. From the southeasterly corner of the parcel a rail fence ran easterly to the lake. The existence of this fence, which marked the northerly boundary of the disputed triangle, is not seriously disputed.

"The acts of dominion and ownership over the triangle by plaintiffs is wholly consistent with their belief that they owned the property. They removed the fence. They cleared the brush on the property at least twice. When their ownership was challenged, they immediately and vigorously asserted their ownership and defended their title. In 1955 they mortgaged a portion of the triangle placing such mortgage on record. In this mortgage they warranted their title and made their claim a matter of public record.

"There is no question in the court's mind but that plaintiffs believed and expected that they were acquiring title to this triangle. As to them, omission from the conveyances of a proper description of the triangle was the result of a mistake. But to justify reforming the conveyances it must appear that the mistake was mutual. *Stevenson* v. *Aalto,* 333 Mich 582.

"The Court can see little purpose to the pointing out of boundaries by a seller unless the conveyance is to include the land within the boundaries. The mere fact of pointing out the boundaries during negotiation indicates mistake on the part of the seller where the conveyance does not convey the same land.

"There is more. In the probating of Edith Moody's estate, her beneficiary apparently considered that Miss Moody had disposed of all of her real estate. It is apparent that she intended to convey at least all of her lands south of the 2-1/2-acre parcel by her conveyance of the west half of the southwest fractional quarter, for it is incredible that she would intend to except from the sale the disputed triangle which is not large enough, by itself, to be of significant value, and which would, by conveyance of the land to the west, be landlocked and inaccessible.

"This court concludes that the disputed triangle, if not covered by the conveyances, was omitted

therefrom by mutual mistake and the conveyances should be reformed accordingly.

"As to the 2-1/2-acre parcel the evidence is equally persuasive. Wholly apart from the testimony of plaintiffs as to conversations with Edith Moody, to which objection was made, it is established that Edith Moody did point out the boundaries of her property to plaintiffs prior to sale; that the boundaries were marked on the north and east by old fences; that there were structures on this parcel which were subsequently torn down and removed by plaintiffs; that the heirs of Edith Moody, in the probating of her estate, recited that she owned no real estate; and that plaintiffs took possession of the parcel, mortgaged a part thereof, and remained in possession, exercising dominion over the land at the time defendants commenced their ejectment suit.

"Additionally, it is clearly established that the garden spot, reserved in the contract and in the warranty deed, was located on this 2-1/2-acre parcel. Unless Edith Moody intended, as plaintiffs assert, to convey this parcel, there was no need to reserve the use of this garden spot.

"This Court concludes that the 2-1/2-acre parcel was omitted from the conveyances through mutual mistake and plaintiffs are entitled to reformation.

"Defendants are not in the position of good faith purchasers without notice. They recognized plaintiffs' possession by their suit in ejectment, and possession is notice. Recording of a mortgage, with warranty, covering portions of each parcel is constructive notice, at least, of plaintiffs' asserted title."

These findings are adequately supported by the record. Therefore, since it is not clear that a wrong conclusion has been reached, they will stand.

The quantum of proof elicited is ample to support the findings of the trial court.

Objection was made to the testimony of Claude Feldman as to conversations between him and Edith Moody while touring the property and pointing out boundary lines in the presence of the Rupes. Feldman's testimony is admissible, he having no such interest that would disqualify him.

The trial court was aware of the high standard of proof required for reformation by Michigan law. The only case cited in the court's opinion, *Stevenson* v. *Aalto, supra,* sets forth the rule as follows:

"In order to decree the reformation of a written instrument on the ground of mistake, that mistake must be mutual and common to both parties to the instrument. The burden of establishing such mistake is upon the party who seeks reformation. The evidence must be convincing and must clearly establish the right to reformation. [Citing cases.]" at 589.

Since the facts found by the trial court are supported by the record and they support the decree of reformation, the answer to the appellants' question number 2 is in the affirmative.

Our answer to the second question renders the first and third questions moot.

Affirmed.

BURNS and HOLBROOK, JJ., concurred.