MOORE v CREGEUR

Docket No. 260846. Submitted May 3, 2005, at Detroit. Decided May 24, 2005, at 9:25 a.m.

Connie L. Moore brought an action in the Montcalm Circuit Court against Kimberly and Debra Cregeur, seeking recovery of damages for noneconomic loss under the no-fault act, MCL 500.3135. Moore's injuries from an automobile accident included multiple rib fractures and a collapsed lung, as well as detached retinas in her eyes, on which surgical repair was attempted, but was unsuccessful on one eye. A problem developed with her right eye that glasses could not correct and for which further surgical intervention created the risk of blindness. The court, David A. Hoort, J., granted summary disposition for the defendants because the plaintiff failed to present sufficient evidence that the injuries affected her general ability to lead her normal life. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court was correct in ruling that the plaintiff's rib injuries, fractures, and collapsed lung, which all healed, did not affect her general ability to lead her normal life. They do not meet the threshold requirement in MCL 500.3135(1) of serious impairment of body function.

2. The trial court erred in ruling that the plaintiff's eye injuries did not constitute a serious impairment of body function. Objective medical evidence showed that gliotic tissue forming on the right eye distorted and unfocused vision in that eye, that the plaintiff has lost some peripheral vision, and that the vision problems affected the plaintiff's general ability to lead her normal life. Although she can still perform every activity she could before the accident, including photography, cross-stitching, and hunting, the vision problems frustrate her and require devices or retraining to overcome. These devices and retraining are not minor changes in how the plaintiff performs those activities. The vision problems will affect every aspect of her life to some degree and will affect certain specific activities more, so they constitute a serious impairment of body function that affects her general ability to lead her normal life.

Affirmed in part, reversed in part, and remanded for further proceedings.

STATUTES — NO-FAULT ACT — SERIOUS IMPAIRMENT OF BODY FUNCTION.

Vision problems in one eye caused by injury in an automobile accident may constitute a serious impairment of body function where the injured person must use special devices and undergo significant retraining in order to resume performing activities routinely pursued before the accident (MCL 500.3135[1], [2], [7]).

*Eric D. Williams* for the plaintiff.

*Thomas P. Murray, Jr. & Associates* (by *Cynthia S. Fitzgerald*), for the defendants.

Before: MURPHY, P.J., and WHITE and SMOLENSKI, JJ.

PER CURIAM. Plaintiff brought an action for recovery of damages for noneconomic loss under the no-fault statute, MCL 500.3135. The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). Plaintiff appeals as of right, and we reverse in part and remand. This opinion is being decided without oral argument pursuant to MCR 7.214(E).

Plaintiff was involved in an automobile accident with defendants. She suffered a number of injuries, including multiple rib fractures and a collapsed right lung. These injuries healed, but plaintiff continued to suffer neck and back pain. In addition, she was subsequently diagnosed with detached retinas in her eyes, which her treating physician concluded had resulted from the trauma to her head caused by the accident. Plaintiff underwent surgery, with accompanying short-term pain and movement restrictions. The surgery to repair plaintiff's left eye was successful, but complications developed from the surgery on her right eye and they

resulted in permanent loss of visual acuity, a deterioration in her vision to 20/60, and a partial loss of peripheral vision.

Plaintiff filed suit asserting that her injuries constituted a serious impairment of body function. The trial court found that plaintiff had failed to present sufficient evidence that the injuries affected her general ability to lead her normal life, and granted summary disposition to defendants.

This Court reviews de novo the grant or denial of summary disposition to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id.* at 120.]

Under MCL 500.3135(1), a person is subject to tort liability for noneconomic loss caused by his or her "use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." As used in this section, "serious impairment of body function" is defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(7).

Our Supreme Court has provided a framework to use for determining whether a plaintiff meets the serious

impairment threshold. *Kreiner v Fischer*, 471 Mich 109, 131-134; 683 NW2d 611 (2004). First, a court is to determine whether a factual dispute exists "concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment of body function." *Id.* at 131-132. If there are material factual disputes, a court may not decide the issue as a matter of law. If no material question of fact exists regarding the nature and extent of the plaintiff's injuries, whether plaintiff's injuries constitute a serious impairment of body function is a matter of law. MCL 500.3135(2)(a); *Kreiner, supra* at 132.

When a court decides that the issue is a matter of law, it must then go to the second step in the analysis and determine whether "an 'important body function' of the plaintiff has been impaired." *Kreiner, supra* at 132. When a court finds an objectively manifested impairment of an important body function, "it then must determine if the impairment affects the plaintiff's general ability to lead his or her normal life." *Id.* This involves an examination of the plaintiff's life before and after the accident. The court should objectively determine whether any change in his or her lifestyle "has actually affected the plaintiff's 'general ability' to conduct the course of his life." *Id.* at 132-133. "Merely '*any* effect' on the plaintiff's life is insufficient because a de minimus effect would not, as objectively viewed, affect the plaintiff's 'general ability' to lead his life." *Id.* at 133 (emphasis in original). The *Kreiner* Court provided a nonexclusive list of objective factors that may be used in making this determination. These factors include "(a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment,

and (e) the prognosis for eventual recovery." *Id.* at 133. With regard to residual impairments, the *Kreiner* Court noted, "Self-imposed restrictions, as opposed to physician-imposed restrictions, based on real or perceived pain do not establish this point." *Id.* at 133 n 17.

In this case, objective medical evidence exists to show that plaintiff suffered multiple injuries from the accident. The injuries affected several of plaintiff's important body functions, including plaintiff's vision.[1] Hence, the only remaining question is whether those injuries affected plaintiff's general ability to lead her normal life, as required by MCL 500.3135(7).

Plaintiff failed to present sufficient evidence to show that her rib injuries, fractures, and collapsed lung affected her general ability to lead her normal life as defined in *Kreiner*. Therefore, these injuries do not meet the threshold requirement under MCL 500.3135(1). However, we disagree with the trial court's assessment of plaintiff's vision loss.

Plaintiff's physician testified at his deposition that a sheet of gliotic tissue had formed on the surface of the retina of plaintiff's right eye. Gliotic tissue causes images to appear distorted and out of focus through that eye. Plaintiff's physician further testified that glasses could not correct the condition and that surgical intervention risked permanent blindness. In addition, plaintiff permanently lost some peripheral vision affect-

---

[1] We note that, although defendants conceded that there is no factual dispute concerning the nature and extent of plaintiff's injuries, defendants' brief suggests that plaintiff's retinal detachments might not have been caused by the accident. However, for the purpose of this appeal, we must consider the evidence in the light most favorable to the party opposing the motion. *Maiden, supra* at 120. Because plaintiff's physician opined that her retinal detachments were probably caused by the accident, for the purpose of this appeal we shall assume this to be the case.

ing her ability to see her feet while looking straight ahead. During the deposition, plaintiff's physician stated that her deteriorated vision probably affected her general ability to lead her normal life. Specifically he stated, "You have two conflicting images. If you've ever put something that would fog or deform the vision in one eye, and the other eye is seeing normal [sic], your brain somehow has to fuse those images. And for most . . . people, it's very disturbing." Although defendants correctly note that, even with her vision loss, plaintiff can still perform virtually every activity that she performed before the accident, it is also self-evident that plaintiff's vision loss will affect every aspect of her waking life to some extent. While plaintiff acknowledged at her deposition that she has adjusted to her vision loss, she also stated that there are a lot of things that are now difficult to do. She testified that even routine things, such as reading a book, are frustrating as a result of the injury. When asked about the level of frustration that plaintiff experiences in her day-to-day activities, plaintiff's physician characterized it as "the difference of being able to walk from here to your car unimpeded versus walking from here to your car with the use of a crutch." Furthermore, plaintiff stated that she has trouble taking pictures, cross-stitching, and can no longer hunt.[2]

Defendants suggest that, because plaintiff can still pursue all these activities, albeit with the aid of devices such as magnifiers and special lighting, or with retraining, the injuries do not rise to the level of affecting plaintiff's general ability to lead her normal life. We

---

[2] At the January 27, 2005, motion hearing, the trial court minimized the effect of plaintiff's vision loss on her ability to hunt, stating, "Even the deer hunting she could probably do [if] she were to train herself to use her left eye as she has to do now when sighting in the camera."

reject this application of the *Kreiner* standard. Although "minor changes in how a person performs a specific activity may not change the fact that the person may still 'generally' be able to perform that activity," *Kreiner, supra* at 131, we do not believe that plaintiff's inability to perform the activities she performed before the accident without the aid of special devices and significant retraining constitutes a "minor change" in how plaintiff performs those activities. By this standard, plaintiff could have lost her right eye entirely and the loss still would not have affected her general ability to lead her normal life because she could learn to perform the same activities with just one eye. The fact that plaintiff has had to take special steps to pursue the activities she routinely pursued in the past is clear evidence that her vision loss has affected her general ability to lead her normal life.

Even if the effect on any one activity, such as hunting or cross-stitching, did not by itself constitute a serious impairment of a body function, we must consider plaintiff's whole life in determining whether the threshold has been met. *Id.* at 133 n 16. Plaintiff's vision loss will affect every aspect of her life to some degree and will affect certain specific activities, such as hunting, even more. Taking these effects in the aggregate, we conclude that plaintiff's vision loss affects her general ability to lead her normal life, and, therefore, plaintiff's vision loss is, as a matter of law, "a serious impairment of body function." MCL 500.3135(2)(a).

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.