*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIMOTHY H. JACOBS and LISA L. JACOBS,

Plaintiffs/Counterdefendants-
Appellants,

v

MARK A. JACOBS and DIANE M. JACOBS,

Defendants/Counterplaintiffs/Third-
Party Plaintiffs-Appellees,

and

HAROLD A. JACOBS and DONNA M. JACOBS,

Third-Party Defendants.

UNPUBLISHED
November 12, 2020

No. 349596
Muskegon Circuit Court
LC No. 18-004959-CZ

Before: SAWYER, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs, Timothy and Lisa Jacobs, appeal as of right the trial court's order determining that defendants, Mark and Diane Jacobs, were the fee-simple owners of a 50-foot area of land located between the parties' properties.[1] We affirm.

## I. BACKGROUND

This case arose from a real-property dispute between brothers Timothy and Mark, as well as their respective wives. Although the real property involved in this case has been in their family

---

[1] Several of the individuals involved in this case share the same last name. For clarity, we will refer to those individuals by their first names.

for many years, conveyances in a series of deeds created a dispute regarding ownership of a 50-foot area of land.

In 1978, Timothy and Mark's maternal grandparents, Edward and Theresa Emery, conveyed the real property located at 2754 S. Slocum Road, in Ravenna, Michigan, to Timothy and Mark's parents, Harold and Donna Jacobs. The Emerys conveyed this parcel pursuant to a warranty deed. For clarity, we will refer to this parcel as Plaintiffs' Property, and will refer to this deed as the 1978 Deed. Harold and Donna constructed a house on Plaintiffs' Property, and they lived on the property with their three children from 1978 to 1994. It is uncontested that the Plaintiffs' Property on which Harold and Donna built their home and lived with their family included the 50-foot area of land now in dispute, which we will refer to as the Disputed Property. The Disputed Property did not have any special aspects or historical or familial significance, except that various members of the family shared the land for recreational uses.

In October 1994, Harold and Donna conveyed the majority of Plaintiffs' Property to Timothy and his wife Lisa, pursuant to a warranty deed, which we will refer to as the Plaintiffs' 1994 Deed. Testimony indicated that Edward Emery instructed his attorney to prepare the Plaintiffs' 1994 Deed. It is uncontested that the Plaintiffs' 1994 Deed did not, on its face, convey the 50-foot area of land now in dispute. Because that area of land was not conveyed in the deed, title to that land remained with Harold and Donna. Timothy, however, testified that he believed that his parents had conveyed the Disputed Property to him and his wife in the Plaintiffs' 1994 Deed. Furthermore, both Harold and Donna testified that they intended to convey to Timothy and Lisa the entire parcel of real property that they had received from the Emerys pursuant to the 1978 Deed, including the Disputed Property.

In November 1994, the Emerys conveyed the real property located at 2716 Slocum Road, in Ravenna, Michigan, to Harold and Donna. The Emerys conveyed this parcel pursuant to a quitclaim deed. For clarity, we will refer to this parcel as Defendants' Property, and will refer to this deed as the Defendants' 1994 Deed. It is uncontested that the Defendants' 1994 Deed did not convey the 50-foot area of land now in dispute. As explained above, Harold and Donna owned that 50-foot area of land in 1994, by virtue of the 1978 Deed that they received from the Emerys, but they continued to own it after 1994 because they did not convey that area of land to Timothy and his wife in the Plaintiffs' 1994 Deed.

In 1998, Harold and Donna made improvements and additions to Defendants' Property, including a garage and a deck that were attached to a house on the property, as well as stairs to the deck, a cement driveway apron, and a front walkway. These improvements were partially located on the Disputed Property. Harold and Donna testified that they believed that they had constructed these improvements on Defendants' Property and that they were not aware that these improvements encroached on the Disputed Property.

In July 2005, Harold and Donna conveyed Defendants' Property to Mark and Diane. Harold and Donna conveyed this parcel pursuant to a warranty deed. For clarity, we will refer to this deed as the 2005 Deed. The 2005 Deed conveyed the same property that the Emerys had conveyed to Harold and Donna pursuant to the Defendants' 1994 Deed. As explained above, it is uncontested that the Defendants' 1994 Deed did not convey the 50-foot area of land now in dispute. Therefore, the 2005 Deed did not, on its face, convey the 50-foot area of land to Mark and Diane.

According to Mark, however, he believed that the 2005 Deed conveyed that Disputed Property, and he would not have purchased the property if the conveyance had not included the 50-foot area of land. The evidence indicated that a portion of the house and its associated improvements was constructed on the Disputed Property.

Timothy and Mark eventually had a falling out. In approximately 2011 or 2012, Timothy's son allegedly shot a cat belonging to Mark's daughter, and this incident affected the brothers' relationship. Then in March 2018, an incident occurred that gave rise to the parties' disagreement regarding who owned the Disputed Property. At that time, Harold and Timothy constructed a bridge across a creek. During that construction project, a cement bag fell from Timothy's vehicle, and it opened on the Disputed Property. Timothy did not clean up the cement, and after a few days, he received a text message from Mark that stated, "[S]tay the blank off my land. You and your old man got a one-time pass."

Plaintiffs believed that they owned the Disputed Property, and they requested a survey. That survey revealed that Harold and Donna still owned the Disputed Property, as it had not been conveyed to Timothy and Lisa in the Plaintiffs' 1994 Deed, and had not been conveyed to Mark and Diane in the 2005 Deed. Harold and Donna thereafter executed a quitclaim deed to convey the Disputed Property to Timothy and Lisa, who recorded the deed. For clarity, we will refer to this deed as the 2018 Disputed Property Deed. In June 2018, Timothy and Lisa conveyed to Mark and Diane land within the Disputed Property where the improvements made in 1998 were located. Timothy and Lisa conveyed this land pursuant to a quitclaim deed. For clarity, we will refer to this deed as the Improvements Deed. This conveyance was a triangular area of land that included the house in which defendants lived at 2716 Slocum Road, including the 1998 improvements.

Plaintiffs thereafter brought a quiet-title claim against defendants, alleging that plaintiffs held the title to and were the fee-simple owners of the Disputed Property. Defendants filed a counterclaim and requested the trial court to declare that they were the fee-simple owners of the Disputed Property. In addition, defendants requested that the trial court reform the 2005 Deed to include the Disputed Property. Plaintiffs sought a temporary restraining order, which the trial court denied. Plaintiffs also sought a preliminary injunction, but the trial court denied that relief, finding that the likelihood that either plaintiffs or defendants would prevail on the merits of this case was equal.

After a bench trial, the trial court rendered its findings of fact. The trial court found that Edward Emery drafted the Plaintiffs' 1994 Deed and that he intentionally omitted the Disputed Property from that conveyance. The trial court found that Edward needed the 50 feet of the Disputed Property in order to build a house and that Edward assured Harold and Donna that they had enough space to expand the house on Defendants' Property. The trial court reasoned that this assurance was true if plaintiffs' property was 250 feet wide from north to south. The trial court also found that the Disputed Property was necessary for Harold and Donna to expand their house, but that it added little value to the land belonging to Timothy and his wife because they had access to the creek without ownership of the Disputed Property.

Regarding the 2005 Deed, the trial court found that this deed did not comply with Harold and Donna's intent to convey to defendants the house on the property. The trial court reasoned that the house on Defendants' Property extended substantially over the southern boundary that was

described in the 2005 Deed. The trial court found that Harold and Donna made a mistake regarding the 2005 Deed because the conveyance excluding the Disputed Property did not comply with Harold and Donna's intent to convey to Mark and his wife the entire house and the real property on which it was constructed. Although Harold testified that his and Mark's survey of Defendants' Property did not include the Disputed Property, the trial court resolved in defendants' favor Mark's testimony that the conveyance included that 50-foot area of land. The trial court also determined that granting defendants the Disputed Property provided defendants with the benefits to which they agreed when they decided to purchase the property from Harold and Donna, including access to the creek.

The trial court determined that plaintiffs did not prove that excluding the Disputed Property from Plaintiffs' 1994 deed was a mistake. As explained above, the trial court determined that this exclusion was an intentional decision by Edward. The trial court determined, however, that there was a mutual mistake regarding the conveyance of Defendants' Property to Mark and his wife when the improvements to the home were located on the Disputed Property. The trial court determined that defendants were entitled to reformation of the 2005 Deed to conform it to Harold's, Donna's, and defendants' intent based on an innocent-misrepresentation theory, notwithstanding the fact that reformation of the 2005 Deed conflicted with the 2018 Disputed Property Deed later executed by Harold and Donna. The trial court therefore entered judgment in favor of defendants and against plaintiffs. The trial court determined that defendants had obtained fee-simple title to the Disputed Property as of July 27, 2005. The trial court also ordered that the 2018 Disputed Property Deed and the improvements deed were null and void.

This appeal followed.

## II. ANALYSIS

## A. STANDARD OF REVIEW

This Court reviews de novo the equitable action to quiet title. *Beach v Lima*, 489 Mich 99, 106; 802 NW2d 1 (2011). This Court also reviews de novo the proper interpretation of legal instruments, such as deeds or contracts. See *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009). Yet, this Court reviews for clear error a trial court's factual findings in a bench trial. *Blackhawk Dev Corp v Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005); *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). "A factual finding is clearly erroneous [when], after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Homes*, 256 Mich App at 512. Finally, this Court reviews de novo a trial court's decision to grant the equitable relief of reformation of a contract or deed. See *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371; 761 NW2d 353 (2008).

## B. PRIMA FACIE CASE OF TITLE

Plaintiffs argue on appeal that they established a prima facie case of title to the Disputed Property and that defendants failed to establish that they had superior right or title to the Disputed Property.

Quiet title actions are governed by MCL 600.2932, which provides:

> Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not. [MCL 600.2932(1).]

MCR 3.411 also pertains to civil actions to determine interests in land. MCR 3.411(D)(1) provides that "[a]fter evidence has been taken, the court shall make findings determining the disputed rights in and title to the premises."

"In an action to quiet title, the plaintiffs have the burden of proof and must make out a prima facie case of title. If the plaintiffs make out a prima facie case, the defendants then have the burden of proving superior right or title in themselves." *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999). A plaintiff demonstrates a prima facie case of title by showing that he acquired and now possesses a legal or equitable interest in the property. *Id.*

Regarding the interpretation of a deed, the plain language of the deed is the best evidence of the parties' intent in drafting the deed. *In re Rudell Estate*, 286 Mich App at 409. "The general rule is that when a quitclaim deed is reduced to writing and executed with the proper formalities, it is presumed to contain the agreement made by the parties at the time and is so conclusively presumed to embody the whole contract that parol evidence is inadmissible to contradict it or add to its terms." *Id.* at 410 (cleaned up). Yet, a trial court may consider extrinsic evidence of the drafting parties' intent if the contract, such as a deed, has latent ambiguity. *Shay v Aldrich*, 487 Mich 648, 667; 790 Mich 629 (2010). Latent ambiguity exists when the language in a contract appears to be clear and intelligible and appears to suggest a single meaning, but other facts show that there is more than one interpretation of the contract. *Id.* at 668. Extrinsic evidence is not admissible to identify a patent ambiguity because it is apparent from the face of the document that there is more than one meaning to the contract terms. *Id.* at 667.

In this case, plaintiffs claimed that they had a legal interest in the Disputed Property based on the 2018 Disputed Property Deed and Harold and Donna's earlier intent to convey to plaintiffs the Disputed Property in Plaintiffs' 1994 Deed. Defendants also claimed that they had an interest in the Disputed Property based on Harold and Donna's intent in 2005 to convey to them the entire house and improvements on Defendants' Property and Harold and Donna's representations to Mark that the conveyance included the Disputed Property.

Although the trial court did not expressly address which set of parties established a prima facie case of title to the Disputed Property, the trial court impliedly did so when it determined that defendants had obtained fee-simple title to the Disputed Property as of July 27, 2005, and that all subsequent deeds to the Disputed Property were null and void. Based on the disputed testimony presented at the bench trial, we cannot conclude that the trial court clearly erred in reaching its findings of fact. Although we may have decided the matter differently if we had been the trier of fact in this case, a trial court's decision on a close question ordinarily cannot be an abuse of discretion, *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000), and the

credibility of the witnesses is a matter for the trial judge when sitting without a jury, *People v Ritzema*, 3 Mich App 637, 640; 143 NW2d 129 (1966). "Generally, questions of witness credibility are for the factfinder." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). Witness credibility is determined by more than just words, and may include such clues such as tonal quality, volume, speech patterns, and a witness's demeanor. *People v Lemmon*, 456 Mich 625, 646; 576 NW2d 129 (1998). After hearing testimony from multiple witnesses and visiting the real property, the trial court determined that Edward Emery intentionally excluded the 50-foot area of land from the Plaintiffs' 1994 deed, and that there was a mutual mistake regarding the conveyance of Defendants' Property to Mark and his wife when the improvements to the home were located on the Disputed Property. We cannot conclude that the trial court clearly erred in its findings of fact.

### C. MUTUAL MISTAKE

Plaintiffs also argue that the trial court erroneously reformed the 2005 Deed because there was no mutual mistake to support the reformation.

Generally, under the merger doctrine, "a deed made in full execution of a contract for the sale of land is presumed to merge the provisions of a preceding contract pursuant to which it is made, including all prior negotiations and agreements leading up to execution of the deed." *Johnson Family*, 281 Mich App at 374-375 (cleaned up). Reformation of a deed, however, is an exception to the merger doctrine. *Id*. at 375. "Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake, accident, or surprise." *Id*. at 371-372. "In most, if not all, cases, the actual intent of the parties to a deed can be discerned only from evidence concerning the prior negotiations and agreements of the parties along with evidence that the deed did not accurately reflect that intent." *Id*. at 375. The equitable power to reform a deed may be applied to unambiguous agreements. *Id*. at 372. Regarding reformation based on a mutual mistake, a party seeking reformation must demonstrate that there was a mutual mistake by clear and convincing evidence. See *id*. at 379; *Casey v Auto Owners Ins Co*, 273 Mich App 388, 399; 729 NW2d 277 (2006).

Based on the evidence and testimony presented during the bench trial, the trial court found that Harold and Donna intended to convey to defendants the entire house and improvements as a part of the 2005 conveyance. Because the house and improvements were partially located on the Disputed Property, the trial court concluded that there was a mistake in the 2005 Deed to the extent that Harold and Donna conveyed to defendants the physical structures without conveying the land on which the house and improvements were located. The trial court's reformation of the 2005 Deed fulfilled Harold and Donna's intent to convey to defendants the entire house and improvements at 2716 Slocum Road. We conclude that the trial court did not err by reforming the 2005 Deed.

Affirmed.  Defendants, having prevailed in full, may tax costs under MCR 7.219(F).


/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Brock A. Swartzle