*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VERONICA WEHNER,

        Plaintiff/Counterdefendant,

v

JAMES SYWAK and MARY SYWAK,

        Defendants/Counterplaintiffs/Third-
        Party Plaintiffs/Third-Party
        Counterdefendants-Appellees,

and

VELLA GOODMAN,

        Third-Party Defendant/Third-Party
        Counterplaintiff-Appellant,

and

ESTATE OF LEO GOODMAN, JR.,

        Third-Party Defendant/Third-Party
        Counterplaintiff.

UNPUBLISHED
August 20, 2025
1:26 PM

No. 368223
Oakland Circuit Court
LC No. 2019-178125-CH

Before: BORRELLO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

Third-party defendant/third-party counterplaintiff-appellant, Vella Goodman, appeals as of right from an October 17, 2023 judgment, which awarded $100,000 in attorney fees, in favor of defendants/counterplaintiffs/third-party plaintiffs/third-party counterdefendants-appellees, James

-1-

Sywak and Mary Sywak.[1]  On appeal, Vella also challenges the trial court's earlier order denying her motion for summary disposition and granting summary disposition on some claims in favor of the Sywaks.  She further argues that the trial court erred by denying her motion to preclude the Sywaks from presenting certain evidence at an evidentiary hearing concerning damages.  For the reasons stated in this opinion, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

## I.  BASIC FACTS

In 1995, the Goodmans purchased property in Lake Orion, Michigan.  In 1999, plaintiff/counterdefendant, Veronica Wehner, purchased neighboring property.  Wehner and the Goodmans were cordial, and did not have disputes about the boundary line that ran between their respective driveways.  In 2016, the Goodmans listed their property for sale.  The listing information stated that 1.08 acres was for sale.  The Sywaks made an offer, which was accepted.  The purchase agreement permitted the Sywaks to cancel the sale if, upon acquiring a survey, they were dissatisfied with the results.  The Sywaks did not get the property surveyed.  In November 2016, the Sywaks received a warranty deed from the Goodmans after they purchased the property.

Disputes between the Sywaks and Wehner began over the boundary line between their driveways.  In August 2019, Vella Goodman executed an affidavit, averring that "[d]uring my ownership, both our family and Veronica Wehner considered the acquiesced property . . . to be the boundary line."  After the Sywaks had the land surveyed and stated their intent to erect a fence on the recorded boundary line, the dispute between the Sywaks and Wehner became increasingly contentious.

In November 2019, Wehner filed suit against the Sywaks.  The complaint contained claims for: (1) adverse possession; (2) acquiescence; (3) easement by prescription; (4) quiet title; (5) trespass; and (6) invasion of privacy.  Wehner also requested that the trial court enjoin the Sywaks from accessing the disputed property.  In response, the Sywaks filed counterclaims against Wehner for quiet title, trespass, and injunctive relief.  As relevant to the issues raised on appeal, the Sywaks also filed a third-party complaint against Goodman alleging claims of (1) breach of contract; (2) breach of warranty of title; and (3) fraud.  They also plead that they were seeking costs and attorney fees.  Goodman then filed a third-party counterclaim, requesting reformation of the deed based on mutual mistake.

Following discovery and extensive motion practice, Wehner and the Sywaks reached a settlement concerning the boundary line.  Thereafter, the Sywaks' and Wehner's pending claims were dismissed via an August 2023 consent judgment.  Pursuant to the consent judgment, the Sywaks were permanently enjoined from "intentionally trespassing" on Wehner's property as established by the new property line.  With the resolution of the boundary line issue, Goodman moved for summary disposition on the Sywaks' claims; in the alternative, she requested the trial court reform the deed.  The Sywaks opposed the motion, arguing that they were entitled to

---

[1] The judgment also dismissed third-party defendant/third-party counterplaintiff, the Estate of Leo Goodman, Jr.

judgment as a matter of law under MCR 2.116(I)(2). After hearing oral arguments, the trial court granted summary disposition in favor of the Sywaks and denied Goodman's motion for summary disposition.

An evidentiary hearing was scheduled to determine damages. Prior to that hearing, the Sywaks provided documentation to support their requested attorney fees. Goodman, however, moved to exclude the documentary evidence and the testimony of the Sywaks' lawyer, Mark Boettcher. The court denied the motions.

At the evidentiary hearing, the Sywaks requested more than $100,000 in attorney fees.[2] At the close of proofs, the trial court entered a judgment, requiring Goodman to pay the Sywaks $100,000 in attorney fees as damages. This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARDS OF REVIEW

Goodman challenges the trial court's decision to deny her summary disposition and to grant summary disposition to the Sywaks on certain issues. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

### B. ANALYSIS

#### 1. BREACH OF WARRANTY OF TITLE

Goodman argues summary disposition in her favor was proper on the Sywaks' breach of warranty of title claim. "Deeds transfer the ownership interests in real property." *Galvan v Poon*, 511 Mich 206, 211; 999 NW2d 351 (2023). "[U]nder MCL 565.151, a conveyance by warranty deed is deemed to include the usual covenants of title, including the covenant of seisin and of good right to convey, the covenant of quiet enjoyment, the covenant against encumbrances, and the covenant to warrant and defend the title [against all lawful claims.]." *McCausey v Oliver*, 253 Mich App 703, 707; 660 NW2d 337 (2002). At issue in this case is the covenant to warrant and defend the title against all lawful claims.

In *McCausey*, this Court considered the meaning of the phrase "lawful claims" as used in MCL 565.151. *Id*. at 706-708. The *McCausey* Court explained that "the grantor of the warranty deed is not liable unless and until the grantee is evicted from the premises as a result of a paramount title." *Id*. at 708. "Therefore, the grantor must warrant and defend the title to the property if an adverse ownership interest divests the grantee of the property conveyed by the warranty deed, thereby resulting in a breach of the covenant of warranty." *Id*. Eviction is defined as "[t]he act or process of legally dispossessing a person of land or rental property." *Black's Law Dictionary* (10th ed). Actual eviction is "[a] physical expulsion of a person from land or rental property," whereas

---

[2] The Sywaks stated that they would seek compensation from the title company concerning any difference in property value as a result of the settlement with Wehner.

constructive eviction is "[t]he inability of a land purchaser to obtain possession because of paramount outstanding title." *Id.*

In this case, Wehner brought suit against the Sywaks, claiming a portion of the property conveyed to the Sywaks by the Goodmans in the warranty deed. In support of the claims, Wehner submitted Goodman's affidavit, which stated that the disputed property belonged to Wehner, by virtue of the Goodmans' acquiescence for a period of more than 15 years. Goodman now argues that Wehner did not set forth a "lawful" claim because the Sywaks and Wehner never "acknowledged that the other side had paramount title." Yet, after the trial court granted summary disposition on Wehner's claims for adverse possession and easement by prescription in 2021, the Sywaks and Wehner entered into a settlement agreement. In the agreement, the Sywaks agreed that Wehner was entitled to a portion of the property that was conveyed to them by the Goodmans. In exchange, Wehner agreed to dismiss with prejudice her remaining claims relating to the disputed property. The parties' agreement was memorialized in a consent judgment, which set forth the new boundary line and permanently enjoined the Sywaks from "intentionally trespassing" on Wehner's property.

In sum, Wehner made a demand that resulted in the Sywaks being legally dispossessed of a portion of the property that was conveyed to them by the Goodmans in the warranty deed. Wehner's adverse ownership interest divested the Sywaks of the property, resulting in an eviction and a breach of the covenant of warranty. Because Wehner made a "lawful claim," the trial court did not err by granting summary disposition in favor of the Sywaks on the breach of warranty of title claim. See *McCausey*, 253 Mich App at 707-708.

## 2. BREACH OF CONTRACT

Next, Goodman argues that the trial court erred by failing to grant summary disposition in her favor on the Sywaks' breach-of-contract claim. In order to prevail on a breach of contract claim, the plaintiff "must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). Although it is undisputed the Sywaks incurred attorney fees in relation to the property dispute, "Michigan follows the 'American rule' with respect to the payment of attorney fees and costs." *Haliw v Sterling Hts*, 471 Mich 700, 707; 691 NW2d 753 (2005) (quotation marks and citation omitted). "The American rule generally requires parties to shoulder the cost of hiring their own attorneys to assert their legal positions, claims, and defenses." *Hank Orchids LP v Buie*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165761); slip op at 2. Thus, "[a]s a general rule, attorney fees are not recoverable as an element of costs or damages absent an express legal exception." *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). Contractual provisions for the payment of attorney fees as damages are judicially enforceable. *Id.*

Here, the purchase agreement has a provision concerning attorney fees. The Sywaks argued that they were, therefore, entitled to attorney fees as damages. The agreement, however, provides:

> If Seller fails and/or refuses to vacate the Property (and leave same in the condition required under this Agreement) as required under the terms of this Agreement, Seller agrees to immediately pay and/or reimburse Buyer for all costs and expenses incurred in recovering possession of the premises, including actual attorney fees, together with all actual, incidental, and consequential damages Buyer sustains, which shall include, but not be limited to, alternative housing expenses, storage fees, actual attorney fees, and any other costs or expenses which either arise out of or are connected with Seller's failure and/or refusal to vacate the Property as required.

The Sywaks argue that Goodman "failed to vacate the entirety of the property at closing" and to "leave the property in the same condition required by the" purchase agreement because she gave a portion of the property away. However, the record reflects that Goodman did not fail to vacate the property in a timely manner. She left the entirety of the property when she did so and the condition of the property was in the same condition as required under the terms of the contract. It was only years later that, under the terms of a consent judgment, the boundary line was altered. Attorney fees, therefore, are not warranted under the above contract position. As a result, the Sywaks failed to establish that they were entitled to damages on their breach-of-contract claim as a matter of law, so they were not entitled to summary disposition in their favor. *Bank of America, NA*, 499 Mich at 100. The trial court erred by holding otherwise. We reverse that portion of the trial court's ruling and hold summary disposition in favor of Goodman was proper on the breach-of-contract claim.

### 3. FRAUD CLAIM

Goodman next contends that the Sywaks' fraud claim was barred under Michigan's economic-loss doctrine. "The economic-loss doctrine is a judicially created doctrine that bars all tort remedies where the suit is between an aggrieved buyer and a nonperformance seller, the injury consists of damage to the goods themselves, and the only losses alleged are economic." *Sullivan Indus, Inc v Double Seal Glass Co, Inc*, 192 Mich App 333, 339; 480 NW2d 623 (1992). The doctrine "bars tort recovery and limits remedies to those available under the Uniform Commercial Code [(UCC), MCL 440.1101 *et seq*.,] where a claim for damages arises out of the commercial sale of goods and losses incurred are purely economic." *Neibarger v Universal Coops, Inc*, 439 Mich 512, 515; 486 NW2d 612 (1992). The doctrine distinguishes "between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." *Id*. at 520-521. The *Neibarger* Court applied the doctrine where cows were injured by a milking system. *Id*. at 532-533. Although the injury was not to the goods themselves, i.e., the milking machines, the Court determined the doctrine applied where the commercial damages to property, i.e., the cows, were economic and caused by the failure of the product. *Id*.

Unlike in *Neibarger*, this case does not involve the commercial sale of goods. The UCC "applies to transactions in goods. . . ." MCL 440.2102. "Goods" are statutorily defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale. . . ." MCL 440.2105(1). At issue in this case is a strip of land, which is neither manufactured nor movable. As such, neither the UCC, nor the economic-loss doctrine,

apply. Goodman, therefore, was not entitled to dismissal of the fraud claim based on the economic-loss doctrine.

Goodman also argues that summary disposition should have been granted in her favor because the crux of the Sywaks' fraud claim is a contract for the sale of real estate. She cites *Fultz v Union-Commerce Assoc*, 470 Mich 460, 467; 683 NW2d 587 (2004), to support summary disposition was proper because the Goodmans did not owe the Sywaks a duty separate from the purchase agreement. In *Fultz*, our Supreme Court held "a tort action will not lie when based solely on the nonperformance of a contractual duty." *Id*. at 466. Rather, "Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 52; 649 NW2d 783 (2002).

In response, the Sywaks argue that Goodman had a separate and distinct duty under the Seller Disclosure Act, MCL 565.951 *et seq*., to make truthful disclosures. A plaintiff may maintain a fraud action for violations of the Seller Disclosure Act. *Bergen v Baker*, 264 Mich App 376, 385; 691 NW2d 770 (2004). Here, the Goodmans completed a seller disclosure statement in 2016. In relevant part, the Goodmans stated that they were unaware of any features of the property that were shared in common with the adjoining neighbors that might affect the property. They also represented that there were not any "encroachments, easements, zoning violations, or nonconforming uses" on the property. Notably, they did not disclose that they had given away the disputed section of property between their driveway and Wehner's driveway. Goodman's later produced affidavit indicating that the disputed section of property was rightfully Wehner's as a result of acquiesce is proof that the statements in the disclosure statement were false. On this record, therefore, the Sywaks can maintain a fraud action based upon the false statements in the Seller's Disclosure Statement. *Id*. Goodman's arguments to the contrary are not persuasive.[3]

## 4. REFORMATION

Goodman alternatively argues that the trial court erred by dismissing her reformation claim. According to her, the deed should be reformed because it reflects a different boundary line than that agreed to by the Goodmans and the Sywaks. "A deed may be reformed because of the mutual mistake of the parties. But the party seeking reformation must prove the mutual mistake by clear and satisfactory evidence, so as to establish the fact beyond cavil." *Johnson Family Ltd Partnership v White Pines Wireless, LLC*, 281 Mich App 364, 379; 761 NW2d 353 (2008) (quotation marks and citations omitted). "A mutual mistake may be one of fact or one of law." *Id*. As relevant in this case, a mutual mistake of fact means "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 442; 716 NW2d 247 (2006).

---

[3] Goodman also asserts that the fraud claim is barred by the purchase agreement's integration clause and its "as is" clause. However, she did not raise those issues in the trial court. Accordingly, they are waived. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

Here, the undisputed evidence establishes that Goodman and the Sywaks did not share or mutually rely upon the same belief concerning the boundary line. Instead, the Sywaks believed that they were receiving the full 1.08 acres. Goodman did not share that belief as she had already given a portion of her 1.08 acres to Wehner. The trial court, therefore, did not err by granting summary disposition in favor of the Sywaks' on the reformation claim.

## III. ADMISSION OF EVIDENCE

### A. STANDARDS OF REVIEW

Goodman next argues that the trial court erred by admitting certain evidence at the evidentiary hearing on damages. This Court reviews for an abuse of discretion "a trial court's decision to admit or exclude evidence." *In re Archer*, 277 Mich App 71, 77; 744 NW2d 1 (2007). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *Shulick v Richards*, 273 Mich App 320, 324-325; 729 NW2d 533 (2006). "An error of law by the trial court necessarily constitutes an abuse of discretion." *In re Bell*, 341 Mich App 596, 602; 991 NW2d 251 (2022).

### B. ANALYSIS

### 1. FAILURE TO SANCTION UNDER MCR 2.302(E)(2)

First, Goodman argues the Sywaks failed to "disclose computation of their damages and the underlying documents that supported the calculation" in a timely manner. As a result, she argues that the trial court should have excluded evidence relating to the attorney fees under MCR 2.302(E)(2) because the Sywaks failed to supplement their initial disclosures to include a computation of damages, as required by MCR 2.302(A)(1)(f). The record reflects that, in a 2021 disclosure relating to the third-party claims, the Sywaks listed "damages" as: "Attorney fees (recoverable under [*Fagerberg v LeBlanc*, 164 Mich App 349, 356-357; 416 NW2d 438 (1987),] and progeny)—amount unknown at this time." Goodman sought harsh sanctions based upon the fact that the Sywaks did not supplement that disclosure.

"If [a] party fails to seasonably supplement [a disclosure], the trial court may enter an order as is just, including sanctions." *Richardson*, 213 Mich App at 451. "Because the imposition of sanctions is discretionary, the trial court should carefully consider the circumstances of the case to determine whether a drastic sanction, such as dismissing a claim, is appropriate." *Id*. "This Court has set forth a nonexhaustive list of factors that should be considered in fashioning an appropriate sanction[.]" *Id*., citing *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990). The list includes:

> (1) whether the violation was wilful or accidental, (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses), (3) the prejudice to the [other party], (4) actual notice to the [other party] of the witness and the length of time prior to trial that the [other party] received such actual notice, (5) whether there exists a history of [the party] engaging in deliberate delay, (6) the degree of compliance by the [party] with other provisions of the court's order, (7)

an attempt by the [party] to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice. [*Id.* (citations omitted).]

Here, there is no indication that the Sywaks failed to comply with the trial court's orders during the proceedings, and Goodman never requested the trial court to order the Sywaks to provide additional information concerning the attorney fees. It does not appear the Sywaks wanted to hide discoverable information. Rather, the Sywaks' lawyer believed it was customary to wait until the proceedings concluded to present evidence relating to attorney fees. Once the evidentiary hearing was scheduled, the Sywaks began providing evidence relating to their requested attorney fees.

Other than claiming that she would be subjected to a trial by ambush, Goodman did not explain how she was prejudiced. And, given that Goodman was provided information concerning the attorney fees days before the evidentiary hearing, we ascertain no prejudice. Review of the transcript demonstrates that Goodman's lawyer was able to effectively cross-examine the Sywaks' lawyer about the billing records and his manner of billing. His questions further demonstrated an understanding and familiarity with the records relied on by the Sywaks. Additionally, the purpose of discovery was achieved because the facts and circumstances relating to the attorney fee issue were not concealed. See *Spine Specialists of Mich, PC v State Farm Mut Auto Ins Co*, 317 Mich App 497, 501; 894 NW2d 749 (2016). Finally, Goodman was aware the Sywaks sought attorney fees as damages because the request for relief was pleaded in the third-party complaint. Also, in an October 2019 letter, the Sywaks' lawyer had informed Goodman that the Sywaks had incurred attorney fees in relation to the boundary dispute and that she would be responsible for paying the fees.

If the trial court excluded the documentary evidence concerning the amount of attorney fees expended by the Sywaks, this sanction would have been the equivalent of striking the Sywaks' request for damages in its breach of warranty of title claim. This would have precluded the introduction of documentary evidence on the issue, rendering the claim for attorney fees unsustainable. Such a sanction would have been overly harsh, particularly when considering Goodman had notice the Sywaks were seeking attorney fees as damages as early as 2019. There is no indication Goodman sought discovery on the issue of the amount of attorney fees, or that the Sywaks refused a request to supplement their initial disclosure. On these facts, it cannot be said the trial court abused its discretion by failing to sanction the Sywaks by excluding evidence relating to attorney fees under MCR 2.302(E)(2).

## 2. FAILURE TO SANCTION UNDER MCR 2.401(I)(2)

Goodman next argues the trial court erred by not sanctioning the Sywaks for failing to list the documentary evidence relating to the attorney fees on their exhibit lists. She contends that the documentary evidence should have been excluded under MCR 2.401(I)(2). However, this argument was never raised before the trial court, so it is waived. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

### 3. FAILURE TO PRECLUDE THE SYWAKS' LAWYER FROM TESTIFYING

Goodman additionally challenges the trial court's failure to preclude the Sywaks' lawyer from testifying. "Witness lists are an element of discovery. The ultimate objective of pretrial discovery is to make available to all parties, in advance of trial, all relevant facts which might be admitted into evidence at trial. The purpose of witness lists is to avoid trial by surprise." *Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993) (quotation marks and citations omitted). Under MCR 2.401(I)(2), a trial court "may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon good cause shown." Because the Sywaks' lawyer was listed as a witness in August 2020, MCR 2.401(I)(2) does not apply.

Goodman also complains that she was unable to successfully depose the Sywaks' lawyer. However, she never brought a motion to compel his deposition. Rather, she waited until after the evidentiary hearing was scheduled to seek his deposition, leaving an insufficient period of time to arrange for the deposition.

Overall, the facts of this case do not support imposing a discovery sanction.

## IV. ATTORNEY FEES

### A. STANDARDS OF REVIEW

Finally, Goodman argues that the court erred by awarding $100,000 in attorney fees. "As with other findings of fact, an award of damages is reviewed" for clear error. *Jackson v Bulk AG Innovations, LLC*, 342 Mich App 19, 24; 993 NW2d 11 (2022). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Conservatorship of Murray*, 336 Mich App 234, 239-240; 970 NW2d 372 (2021) (quotation marks and citation omitted). "The reasonableness of the fees awarded is also reviewed for an abuse of discretion, and any underlying questions of law are reviewed de novo." *Lakeside Retreats LLC v Camp No Counselors, LLC*, 340 Mich App 79, 89; 985 NW2d 225 (2022).

### B. ANALYSIS

### 1. ATTORNEY FEES UNDER MCL 565.151

Goodman first argues the trial court erred as a matter of law when calculating attorney fees under MCL 565.151. The Sywaks claimed MCL 565.151 required Goodman to defend the title conveyed to them and authorized their recovery of attorney fees. As noted above, a "warranty deed is deemed to include the usual covenants of title, including the covenant of seisin and of good right to convey, the covenant of quiet enjoyment, the covenant against encumbrances, and the covenant to warrant and defend the title." *McCausey*, 253 Mich App at 707. However, "the covenant of warranty is not a warranty of the indefeasibility of the title and *it does not warrant against every adverse claim*; rather, it is a covenant against eviction and is not breached until there is an eviction, actual or constructive, under a paramount title." *Id*. at 708 (emphasis added). "[T]he grantor must warrant and defend the title to the property if an adverse ownership interest divests

the grantee of the property conveyed by the warranty deed, thereby resulting in a breach of the covenant of warranty." *Id*.

In *McCausey*, 253 Mich App at 704, 709, the "plaintiffs brought an adverse possession claim, challenging title to the property conveyed by the [grantors] to the [grantees]." After the grantees "successfully defended against [the] action," they sought costs and attorney fees. *Id*. at 704. The trial court ordered that, because the grantors "did not breach the warranty deed since [the] plaintiffs' claim of adverse possession failed," "each party was responsible for their own costs and attorney fees. . . ." *Id*. at 705. This Court agreed "each party was responsible for their own costs and attorney fees" because the "[p]laintiffs' action was not a lawful claim," which triggered the grantors' "duty to warrant and defend the title pursuant to MCL 565.151, because the demand was not recognized by law as supported by a rightful, and superior, interest." *Id*. at 709 (quotation marks and citation omitted). Because the plaintiffs' adverse possession claim ultimately failed, "[t]here was not a breach of the covenant of warranty because [the] plaintiffs did not have a paramount title and the [grantees] were not evicted." *Id*. at 704-705, 709. For the Sywaks to be entitled to attorney fees under MCL 565.151, the fees had to be related to a breach of the covenant of warranty, i.e., claims resulting in the Sywaks being legally disposed of the premises by someone with paramount title. See *McCausey*, 253 Mich App at 705-708.

Under MCL 565.151, the Sywaks were entitled to attorney fees relating to Wehner's claims for (1) acquiescence; (2) quiet title; and (3) injunctive relief because those claims were directly related to a breach of the covenant of warranty. Any of these claims, which were pending at the time of settlement, could have resulted in the Sywaks being evicted from a portion of the premises the Goodmans purported to convey to them. See e.g., *Beach v Twp of Lima*, 489 Mich 99, 102; 802 NW2d 1 (2011); *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 88, 105-112; 662 NW2d 387 (2003).

Nonetheless, the Sywaks' lawyer, who had represented the Sywaks since 2019, and spent "[h]undreds of hours" on the case, believed the Sywaks were entitled to attorney fees for work he performed on *all* the claims. He reasoned that all of the claims arose because the Goodmans failed to convey the full 1.08 acres and their failure to do so constituted fraud. He also reasoned that Wehner's claims resulted because she believed Goodman gave certain property to her. However, Wehner filed claims that were not directly related to the breach of the covenant of warranty.[4] Further, the Sywaks sought attorney fees in relation to their counterclaims against Wehner, the third-party claims filed by the Sywaks, and the third-party counterclaims filed against them by the Estate and Vella. None of those claims were directly related to a breach of the covenant of warranty because none of them could have resulted in the Sywaks being evicted from the property.

---

[4] If the easement by prescription claim was successful, Wehner would have been permitted to use the disputed property, but she would not have been able to evict the Sywaks from the property. See *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010). If the trespass and invasion of privacy actions were successful, Wehner would have been entitled to monetary damages, as opposed to superior title to the property. See *Hannay v Dep't of Transp*, 497 Mich 45, 65; 860 NW2d 67 (2014); *Kratze v Indep Order of Oddfellows, Garden City Lodge No 11*, 442 Mich 136, 148-149; 500 NW2d 115 (1993).

Nonetheless, the trial court concluded the Sywaks were entitled to attorney fees in relation to all the claims. The trial court erred as a matter of law by doing so, and the amount of attorney fees must, accordingly, be recalculated on remand.

Next, Goodman claims that the trial court disregarded the appropriate legal principles when calculating reasonable attorney fees. In determining reasonable attorney fees, trial courts are generally required to follow the framework from *Smith v Khouri*, 481 Mich 519, 530-531; 751 NW2d 472 (2008), as further refined by *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281-282; 884 NW2d 257 (2016). See *Woodman v Dep't of Corrections*, 511 Mich 427, 450-451; 999 NW2d 463 (2023). Under the *Smith* framework, a trial court begins its analysis by "determining the fee customarily charged in the locality for similar legal services" based on "reliable surveys or other credible evidence of the legal market." *Smith*, 481 Mich at 530-531 (quotation marks and citations omitted). "This number should be multiplied by the reasonable number of hours expended in the case. . . ." *Id*. at 531. "The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee." *Id*. Finally, the trial court should consider the following list of non-exclusive factors to determine whether an upward or downward adjustment of attorney fees is appropriate:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Pirgu*, 499 Mich at 281-282.]

While the trial court appears to have acknowledged its duties under the *Smith* and *Pirgu* framework, it failed to follow it. Specifically, the Sywaks sought attorney fees for the work of three attorneys, including the one that testified at the evidentiary hearing. Only evidence relating to the testifying lawyer's rate of $250 per hour was presented, however. Nevertheless, the trial court determined $250 was an appropriate rate for that lawyer and at least one other lawyer. The trial court stated it was multiplying $250 per hour, by 400 hours, which equaled $100,000. Although the Sywaks sought $116,740.84 in attorney fees, the trial court stated it made a downward adjustment based on its finding there were some "ancillary issues" for which Goodman should not be responsible. The trial court repeatedly used the word "reasonable" when making its ruling. However, the trial court did not discuss the *Pirgu* factors. "In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors . . . on the record and

-11-

justify the relevance and use of any additional factors." *Id*. at 282. On remand, the trial court must follow the *Smith* and *Pirgu* framework and explain the rationale for its decision.

Additionally, Goodman claims the trial court "completely ignored the reasonableness of the attorneys' activity" when calculating attorney fees. Because remand is necessary, we need not address those issues on appeal. Goodman, however, is not precluded from maintaining her reasonableness arguments in the trial court on remand.

In sum, the trial court erred as matter of law when calculating attorney fees recoverable under MCL 565.151. We vacate that portion of the October 17, 2023 judgment and remand for further proceedings. On remand, the trial court should determine the appropriate amount of attorney fees under the *Smith* and *Pirgu* framework.

### 2. ATTORNEY FEES UNDER *FAGERBERG*

The Sywaks argue the award of attorney fees should be affirmed because the Sywaks were entitled to attorney fees under *Fagerberg*, which they argue is an exception to the American rule. We disagree, however. The fees awarded as damages in *Fagerberg* were not the fees incurred in pursuing the tort action itself. See *Fagerberg*, 164 Mich App at 356-357. Rather, they were costs incurred because of, and to remedy, the underlying tort. See *id*. Because the Sywaks requested attorney fees in relation to pursuing the underlying tort, as opposed to damages flowing from the alleged fraud, *Fagerberg* is inapplicable.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no taxable costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock